UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MORDHAY ("MOTI") BARKAN,

                      Petitioner,

                                                      MEMORANDUM
               -against-                             OPINION AND ORDER

LEHMAN BROTHERS INC.,                       04 Civ. 07431 (GBD)

                      Respondent.
------------------------------------------------------------------x
GEORGE B. DANIELS, District Judge:

      Petitioner Mordhay Barkan brings suit seeking confirmation of a $2.8 million arbitration award finding respondent Lehman Brothers ("Lehman") liable for negligence in handling petitioner's account. Respondent moved to vacate, or in the alternative to modify the arbitration award. For the reasons stated below, petitioner's motion is granted and respondent's motion is denied.

## ARBITRATION HEARING

      In November 1999, petitioner opened an account with Lehman Brothers in order to diversify his holdings in a high-tech company, Diversinet ("DVNT"). He testified before the arbitrators that he expected Lehman to devise a plan to diversify both the unrestricted shares and the restricted DVNT shares he held. Transcript of Arbitration Hearing, Aug. 30, 2004 at 381. Lehman failed to provide such a plan. Instead, Lehman recommended two investment possibilities which petitioner considered inappropriate for diversification purposes. Id. at 269-270 & 380-381. One investment involved buying shares from other high-tech companies. The other was a small transaction that would not dilute petitioner's holdings of DVNT to the extent

he wished.

The arbitrators found that Lehman failed to execute "orders to sell DVNT stock." Complaint, Exhibit A at 1. Petitioner held 100,000 shares of DVNT in his Lehman account. In March 2000, after DVNT's prices rose significantly, petitioner testified he consistently instructed Lehman to "sell [his] shares" and diversify his account. Transcript Arbitration Hearing, Jan. 29, 2004 at 49. Lehman sold only 20,000 shares on March 10, 2000. On March 13, 2000, petitioner testified he contacted Lehman and demanded that it "keep selling." Id. at 55. That day, another 20,000 shares were sold at a higher price, but petitioner still held 60,000 shares in his account that Lehman failed to sell despite petitioner's repeated demands to "keep diversifying" by selling the rest of the shares. Respondent's Exhibit Notebook, Tab 78. Over the next few days, DVNT's price fell. Petitioner claims he continued to insist that his shares be sold. Id. at 70. Lehman did not sell. Instead, petitioner claims Lehman persuaded him that the price drop was due to a temporary "market correction," and in fact presented an opportunity to invest more resources in DVNT stock. Id. Petitioner alleges that Lehman also informed him that if he sold while prices were low and the prices rebounded, he would lose "any cause of action against Lehman." Id. at 84. In the end, petitioner bought an additional 170,000 shares of DVNT.

Over the next few months, petitioner transferred to Lehman an additional 500,000 shares that had been previously restricted but had become freely tradeable. In June 2000, DVNT's stock prices rose slightly and petitioner communicated to Lehman that he wanted his shares sold, as he expressed on an email to Lehman on June 21, 2000: "As mentioned many times, please keep diversifying." Respondent's Exhibit Notebook, Tab 99. Lehman failed to execute these requests. By July 2000, when DVNT prices had fallen again, petitioner claims he urged Lehman

2

to sell all the DVNT stock in his account. Pet'r Mem. Of Law in Supp. Of Mot. To Confirm Arbitration Award at 8. In August 2000, after Lehman only sold $1.2 million worth of DVNT stock out of the $2.1 million petitioner held in his account, petitioner issued an order requesting that 25,000 shares be sold at a price of $9.00 per share, and another 25,000 be sold at $9.50 per share. Respondent's Exhibit Notebook, Tab 107. The shares reached those set limits, and still, Lehman failed to sell. In addition, when petitioner tried to contact Lehman regarding its failure to sell, his e-mails and telephone calls remained unanswered until a month later. Id. at 112-120.

Petitioner filed a Statement of Claim as required by the arbitration clause in his standard contract with Lehman. Petitioner complained that Lehman had failed to devise and execute a plan to diversify his DVNT shares.[1] Lehman submitted an answer denying the allegations of "impropriety" in the complaint. Lehman argued in its defense that it had no duty to diversify petitioner's holdings as this was a non-discretionary account and therefore, it was only required to execute the trades he ordered. Resp't Mem. of Law in Opp'n to Application to Confirm Arbitration Award at 15. Lehman also included eight affirmative defenses in its answer. Among these were the principles of ratification and mitigation. However, neither defense was argued during the five day arbitration hearing in January 2004. During the hearing, both parties submitted records of e-mail communications, evidence of telephone conversations and share prices, and financial reports for the panel's consideration. After a review of the evidence and extensive testimony by petitioner and Lehman employees, the arbitration panel found Lehman liable in the amount of $2.8 million.

---

[1]Petitioner named the broker as defendant in addition to Lehman in his Statement of Claim. The arbitrators however, dismissed with prejudice the claims against the individual broker.

DISCUSSION

A.   Standard of Review

The Second Circuit has held that "[a]n arbitration award may be vacated if it exhibits "a manifest disregard of the law." Goldman v. Architectural Iron Co., 306 F.3d 1214, 1216 (2d Cir. 2002). It has been considered however, a "doctrine of last resort" limited only to those "exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent." Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004); Duferco Intern. Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 386 (2d Cir. 2003). The manifest disregard standard requires "more than a mistake of law or a clear error in fact finding" to disturb an award. Goldman, 306 F.3d at 1216. "Nor is the failure of the arbitrators to understand the law, or to apply it appropriately, sufficient." GMS Group, LLC v. Benderson, 326 F.3d 75, 77 (2d Cir. 2003).

Manifest disregard can be established only where a governing legal principle is "well defined, explicit, and clearly applicable to the case, and where the arbitrator ignored it after it was brought to the arbitrator's attention in a way that assures that the arbitrator knew its controlling nature." Goldman, 306 F.3d at 1216. Where an arbitrator provides little or no explanation for an award, the award will withstand the manifest disregard review "[i]f *a* ground for the arbitrator's decision can be inferred from the facts of the case." Fahnestock & Co. v. Waltman, 935 F.2d 512, 516 (2d Cir.1991); Sobel v. Hertz, Warner & Co., 469 F.2d 1211, 1216 (2d Cir.1972).

B.   Arbitrators' Finding of Negligence

Lehman contends that petitioner's account was non-discretionary and that "the arbitrators manifestly disregarded the law pertaining to the duty arising out of a non-discretionary account."

4

Resp't Mem. of Law in Opp'n to Application to Confirm Arbitration Award at 15. Lehman claims that the duty that Lehman owed to petitioner under a non-discretionary account was only to "faithfully and diligently execute his trade orders," not to "monitory [sic] petitioner's [a]ccount or to give advice to him on an ongoing basis." Id. at 16. It argues that "a broker owes no such duty to give ongoing advice to the holder of a nondiscretionary account," he only "owes duties of diligence and competence in executing the client's trade orders." De Kwiatkowski v. Bear, Stearns & Co., Inc., 306 F.3d 1293, 1302 (2d Cir. 2002). Therefore, Lehman's position is that petitioner has no claim against them for not "diversifying" his account, since it did not have the flexible authority to do so under a non-discretionary account. Resp't Mem. of Law in Opp'n to Application to Confirm Arbitration Award at 17.

The evidence in the record however, supports the arbitrators' finding of negligence, even under a non-discretionary account. Lehman's failure to sell 60,000 DVNT shares in petitioner's account on March 13, after he requested that they be sold, is sufficient evidence of a breach of the non-discretionary duty owed to petitioner. The March 13 failure to sell provides "*a* ground for the arbitrator's decision" of liability, which is all that is required to withstand the standard of manifest disregard of the law. Fahnestock, 935 F.2d at 516 (emphasis in original). Moreover, there was other evidence of transactions that occurred during the course of petitioner's dealings with Lehman that support the arbitrator' finding of negligence, including: Lehman's failure to sell the shares in June 21, 2000, when the price rebounded slightly, and petitioner had ordered their sale; and Lehman's failure to sell shares after petitioner set price limits on them on August 14, 2000. Respondent cannot demonstrate a manifest disregard of the law that would warrant setting aside the arbitrator's award.

C. <u>Doctrines of Mitigation and Ratification</u>

Lehman claims that the amount of the arbitrators' award indicates that the panel did not apply the doctrines of mitigation and ratification. Its argument assumes that the $2.8 million arbitration award was derived by calculating the total proceeds that petitioner would have received had all 100,000 shares been sold on March 13, before the price drop. Lehman argues that the amount should have been reduced because petitioner both failed to mitigate his damages, and ratified the failure to sell the remaining 60,000 shares by later <u>buying</u> DVNT stock. Resp't Mem. Of Law in Opp'n to Application to Confirm Arbitration Award at 18. Lehman contends that the arbitrators should have reduced the damages under the theories of mitigation and ratification.

The Second Circuit however, has held that "[t]he arbitrator must appreciate the existence of a clearly governing legal principle but decide to ignore it or pay no attention to it" for there to be manifest disregard of the law. <u>Westerbeke Corp.</u>, 304 F.3d at 209. While both mitigation and arbitration were pled as affirmative defenses in Lehman's answer to petitioner's Statement of Claim, they were not further advanced before the arbitrators at any point during the hearing and therefore it cannot be said that the arguments put forth in support of these defenses were disregarded. An arbitrator, even one who is a lawyer, "is ordinarily assumed to be a blank slate unless educated in the law by the parties." <u>Goldman</u>, 306 F.3d at 1216. Such education requires more than a mere mention of the legal principle, it "must be brought to the arbitrator's attention in a way that assures that the arbitrator knew its controlling nature." <u>Id.</u> Lehman did not do so, and cannot now argue manifest disregard of the law when the record it created is barren on that issue.

6

D. <u>Vicarious Liability</u>

Lehman also claims that the arbitrators manifestly disregarded the law of *respondeat superior* because "by dismissing all claims against [the broker], the arbitrators removed any possible legal basis for holding Lehman liable for negligence." Resp't Mem. of Law in Opp'n to Application to Confirm Arbitration Award at 24. However, an arbitration panel may hold a brokerage house liable for negligence while absolving the particular broker from liability. See Perpetual Securities, Inc. v. Tang, 290 F.3d 132, 136 (2d Cir. 2002). There, the Second Circuit stated *in dicta* that "[t]he arbitrators could have found for [petitioner] even absent a finding of *respondeat superior*." Id. For example, negligent supervision can provide an independent basis for liability, even where the individual broker is not similarly held liable by the arbitrator.[2] Moreover, a brokerage firm may be liable for negligence even absent a finding of negligence by any one particular broker. Here, petitioner dealt with various Lehman employees. His contact was not limited to the individual broker alone, and evidence of such interactions was before the arbitrators. Moreover, "The arbitrators may have found that [the brokerage house's] culpability for its negligence was so much greater than [the broker's] culpability that the [brokerage house] should be held solely liable for [petitioner's] losses." Morgan Stanley DW Inc. v. Afridi, 788 N.Y.S.2d 11, 13 (App. Div. 2004). Holding respondent liable for negligence without also holding the individual broker liable is not repugnant, and therefore does not demonstrate a

---

[2]To state a claim for negligent supervision under New York Law, "in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer "knew or should have known of the employee's propensity for the conduct which caused the injury" prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004).

7

manifest disregard of the law.

## CONCLUSION

Petitioner's motion to confirm the award is granted. Respondent's motion to vacate or modify is denied.

Dated: August 2, 2005
      New York, New York

SO ORDERED:

_/s/ George B. Daniels_
GEORGE B. DANIELS
United States District Judge